IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLOSSOMS & BLOOMS, INC.**, *et al.*, <br><br> Plaintiffs, <br><br> *v.* <br><br> **JANE DOE**, *also known as Jessica Walters, account owner of Facebook Account ID # 100072476017484*, <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 22-1557-KSM** |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                               **July 29, 2022**

Plaintiff Blossoms & Blooms, Inc. and its Chief Executive Officer, Plaintiff Domenic Graziano, bring state law claims for defamation *per se* and false light invasion of privacy against Defendant Jane Doe, also known as Jessica Walters, account owner of Facebook Account ID # 100072476017484, alleging that "Jessica Walters" left defamatory reviews of Blossoms & Blooms on Facebook. (Doc. No. 1.) Presently before the Court is Plaintiffs' Motion for Leave to Serve Third-Party Subpoena Prior to a Rule 26(f) Conference. (Doc. No. 3.) For the reasons below, the motion is denied.

**I.   BACKGROUND**

  *A.   Factual Background*

Accepting the allegations in the Complaint as true, the relevant facts are as follows.

Graziano is the Chief Executive Officer of Blossoms & Blooms, a flower shop. (Doc. No. 1 ¶¶ 5–6.) On December 14, 2021, an account identified as belonging to Jessica Walters left a one-star review on the flower shop's Facebook page. (*See* Doc. No. 1-1.) She wrote,

1

> Do not buy your flowers from this shop! This is a terrible business. They essentially pay their extremely hard working [*sic*] employees minimum wage. A family friend of mine worked here previously, and she was treated terribly. She asked for a raise and was told by Domenic that he "couldn't afford" it. Meanwhile, I've seen the man driving around a lime green sports car. He also doesn't give his employees vacation time, sick time, Christmas bonuses . . . anything! To me, this is essentially soulless. Spend your hard-earned money elsewhere where they appreciate and take care of their employees! I could never support a business who does less than the bare minimum for its employees. Shame on them!

(*Id.*) Shortly after it was posted, Graziano deleted the review. (Doc. No. 1 ¶ 16.)

Jessica Walters left another review the next day:

> I left a review on their main business page, but in an act of cowardice, they deleted it and turned off reviews. Don't spend your money at this business. They essentially pay their employees minimum wage, don't offer sick or vacation time, and when employees have asked for raises, they were told by Domenic that he "couldn't afford it." Meanwhile, he drives a lime green sports car around town. Spend your money somewhere that takes care of its employees! I recommend Kremp or Fireside Flowers. They'll likely delete this review too. It's a shame that they can't even defend their own actions and step up and take care of their workers.

(Doc. No. 1-2.)

Plaintiffs claim these statements are "untrue and defamatory." (Doc. No. 1 ¶ 17.) For instance, they say the contention that Plaintiffs "essentially pay their extremely hard working [*sic*] employees minimum wage," "is untrue," as Plaintiffs go "out of their way to make sure their employees are paid enough money to earn a decent living." (Doc. No. 1-1 at 1; Doc. No. 1 ¶ 19.) Similarly, they claim the contention that Graziano denied an employee a raise because he "couldn't afford it" is not true, as Graziano "has never said [that] to any of his employees." (Doc. No. 1 ¶ 20.) And they argue the contention that Plaintiffs' employees are not permitted to take vacation time or sick time and are not paid Christmas bonuses is "an employment policy that is simply untrue on all accounts." (*Id.* ¶ 21.)

Although Graziano has since deleted the comments, Plaintiffs allege that they "received multiple calls on the matter," (*id.* ¶ 25), and Plaintiffs believe the publication of these statements has placed Graziano "in a false light before the world-at-large, in a manner that would be highly offensive to a reasonable person and has caused serious damage to both Plaintiffs' professional and personal reputations" (*id.* ¶ 26).

### B. *Procedural History*

Plaintiffs filed this lawsuit on April 21, 2022. (Doc. No. 1.) On May 13, 2022, they sought leave to serve a third-party subpoena prior to the Rule 26(f) conference. (Doc. No. 3.) Plaintiffs claim that they have been unable to ascertain the true identity of Jessica Walters, the user who left the allegedly defamatory reviews, so they seek to serve Facebook with a Rule 45 subpoena seeking "the IP address, email address, mobile phone number, and timestamp of [her] activity."[1] (Doc. No. 3-1 at 4.) Plaintiffs claim they would "only use this information to prosecute the claims made in [the] Complaint," and explain that, "[w]ithout this information, Plaintiff[s] can neither serve the Defendant nor pursue this lawsuit." (*Id.*)

On June 21, 2022, this case was reassigned from the Honorable C. Darnell Jones to the Honorable Karen Spencer Marson on June 21, 2022. (Doc. No. 4.)

---

[1] Interestingly, Plaintiffs allege the Court has jurisdiction pursuant to 28 U.S.C. § 1332, as "Plaintiff's [sic] believe Defendant is not located in the Commonwealth of Pennsylvania, and therefore complete diversity exists, and the matter in controversy exceeds $75,000, exclusive of interest and costs." (Doc. No. 1 ¶ 1.) And, elsewhere in the Complaint, Plaintiffs allege, "Defendant, using the alias Jessica Walters, is believed to be a United States citizen residing outside of the Commonwealth of Pennsylvania." (*Id.* ¶ 7.) The Court finds it curious that Plaintiffs appear to have sufficient information to allege Jessica Walters lives outside of the Commonwealth of Pennsylvania but claim they are unable to determine Jessica Walters's true identity.

## II.     ANALYSIS

### A.     Legal Standard

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1); *see also Malibu Media, LLC v. Doe*, Civ. A. No. 13-2864, 2013 WL 2392923, at *1 (E.D. Pa. May 31, 2013) (quoting Rule 26(d)(1)). "Rule 26(d) does not set a standard for determining when expedited discovery should be permitted." *Strike 3 Holdings, LLC v. Doe*, 1:18-cv-2674-NLH-JS, 2020 WL 3567282, at *4 (D.N.J. June 30, 2020). Courts in this Circuit typically apply a "good cause" standard to determine the propriety of expedited discovery. *See e.g.*, *id.*; *Canal Street Films v. Does 1–22*, Civ. No. 1:13-CV-0999, 2013 WL 1775063, at *2 (M.D. Pa. Apr. 25, 2013) ("[T]he recent trend among courts in this circuit favors the 'good cause' or reasonableness standard.").

"Good cause exists where the 'need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Strike 3 Holdings, LLC*, 2020 WL 3567282, at *4 (quoting *Malibu Media, LLC v. John Doe*, No. 16-cv-942 (KM/MAH), 2016 WL 952340, at *1 (D.N.J. Mar. 14, 2016)); *see also Canal Street Films*, 2013 WL 1775063, at *3. In the defamation context, courts have recognized that anonymous posters could be prejudiced by such subpoenas, as there is a "substantial" First Amendment interest in protecting the "exchange of opinions and ideas anonymously." *See Best W. Int'l, Inc. v. Doe*, No. CV–06–1537–PHX–DGC, 2006 WL 2091695, at *4 (D. Ariz. July 25, 2006); *see also Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 787 (M.D. Pa. 2008) (acknowledging that "speech over the internet is entitled to First Amendment protection" and that "this protection extends to anonymous internet speech" (quoting *Doe v. Cahill*, 884 A.2d 451, 460 (Del. 2005))).

To protect this interest, courts consider four factors in determining whether to permit plaintiffs to obtain information into an anonymous defendant's identity through early discovery. *See Pilchesky v. Gatelli*, 12 A.3d 430, 442–45 (Pa. Super. Ct. 2011) (citing *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Super. Ct. 2001)).  First, the plaintiff must notify the anonymous poster that he is the subject of a potential subpoena and allow him the opportunity to oppose the motion.  *Id.* at 442.  Second, the plaintiff must produce sufficient evidence to state a *prima facie* case for the claims asserted.  *Id.* at 442–43.  Third, the plaintiff must show that "the requested information is sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief."  *Id.* at 444–45.  And finally, the Court must balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case.  *Id.* at 445.

### B. Discussion

The Court considers whether Plaintiffs have satisfied each of these factors in turn.

#### 1. Notice

Courts require plaintiffs to make efforts to notify anonymous or pseudonymous posters that they are the subject of a subpoena so that the posters have an opportunity to respond to the subpoena.  *See Dendrite Int'l*, 775 A.2d at 760.  Nothing in the instant motion suggests that Plaintiffs have taken any efforts to notify Jessica Walters of the potential subpoena.  The Court appreciates that the Jessica Walters account is just that—a Facebook account—and that the user behind the account may no longer monitor the account, or that the account may be inactive.  But Plaintiffs were nonetheless obliged to take some efforts, such as messaging the account or posting on the account's page, to get in touch with the poster, and they failed to do so.  *Contra Doe I v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008) (finding that the plaintiff

5

satisfied the notice requirement by "posting notice regarding the subpoenas on AutoAdmit . . . , which allowed the posters ample time to respond").

Because Plaintiffs did not take any efforts to notify Jessica Walters of their efforts to subpoena her identifying information, they are not entitled to such a subpoena. *See SI03, Inc. v. Bodybuilding.com, LLC*, Case No. CV 07–6311–EJL, 2008 WL 11348458, at *6–7 (D. Idaho May 1, 2008) (denying the plaintiff's motion to compel discovery into the anonymous defendant's identity because the plaintiff failed to notify the defendant of the subpoena).

    **2.**    ***Prima Facie* Case**

Even if Plaintiffs had satisfied the notification requirement, Plaintiffs' motion nevertheless fails because they have not made out a *prima facie* case against Jessica Walters.

To be entitled to early discovery into an anonymous defendant's identity, a plaintiff "must support his defamation claim with facts sufficient to defeat a summary judgment motion." *See Best W. Int'l*, 2006 WL 2091695, at *4 (citing *Cahill*, 884 A.2d at 460); *cf. Reunion Indus. Inc. v. Doe 1*, No. GD06-007965, 2007 WL 1453491, at *456 (Pa. Ct. Common Pl. Mar. 5, 2007) (applying the summary judgment standard in determining whether to permit early discovery in libel case). That is, "the plaintiff must do more than simply plead his case." *See Pilchesky*, 12 A.3d at 443 (quoting *Solers, Inc. v. Doe*, 977 A.2d 941, 954 (D.C. 2009)). "This standard does not require a plaintiff to prove its case as a matter of undisputed fact, but instead to produce evidence sufficient to establish the plaintiff's *prima facie* case." *Best W. Int'l*, 2006 WL 2091695, at *4. "A plaintiff may rely on exhibits, depositions or affidavits—all evidence which would be admissible and relevant in response to a motion for summary judgment." *See Pilchesky*, 12 A.3d at 443.

We now consider whether Plaintiffs have made out a *prima facie* case as to either of their

state law claims against Jessica Walters.

                i.      Defamation

To establish a claim for defamation under Pennsylvania law, a plaintiff must prove,

(1)      The defamatory character of the communication.

(2)      Its publication by the defendant.

(3)      Its application to the plaintiff.

(4)      The understanding by the recipient of its defamatory meaning.

(5)      The understanding by the recipient of it as intended to be applied to the plaintiff.

(6)      Special harm resulting to the plaintiff from its publication.

(7)      Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a); *see also Castellani v. Scranton Times, L.P.*, 124 A.2d 1229, 1241 (Pa. 2015). The "special harm" provision is two-pronged: the plaintiff must prove "actual harm" and "special damages." *See Ralston v. Garabedian*, --- F. Supp. 3d ---, CIVIL ACTION NO. 19-1539, 2021 WL 6072881, at *23 (E.D. Pa. Dec. 23, 2021). If the allegedly defamatory statement "imputes a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct, the statement constitutes defamation *per se*," and the plaintiff need not prove "special" damages. *See Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. July 14, 2017).

      Plaintiffs have failed to establish a *prima facie* case of defamation for several reasons. First, Plaintiffs have failed to establish the defamatory character of the communication. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215 (Pa. 1981) (quoting *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 472 (Pa. 1960)). "[T]he statement must do more than merely

embarrass or annoy the plaintiff; it must provoke the kind of harm which has grievously fractured [one's] standing in the community of respectable society." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (internal quotation omitted).

Plaintiffs claim Jessica Walters's statements that Graziano pays his employees essentially minimum wage, refused to give his employees a raise, and does not give his employees "vacation time, sick time, [or] Christmas bonuses" are defamatory.[2] (Doc. No. 1 ¶ 21.) Although these reviews may have embarrassed (and clearly did upset) Graziano, they were seemingly written by someone close to a disgruntled employee, and no reasonable person would view them as anything other than a frustrated outburst online. These statements imply that Graziano offers his employees low pay and limited benefits,[3] but the same could be said of many business owners—such statements are not likely to "grievously fracture" his or Blossoms & Blooms's reputation in the community. *See, e.g.*, *Purcell v. Ewing*, 560 F. Supp. 2d 337, 343–44 (M.D. Pa. 2008) (holding that a post on an online message board calling the plaintiff a "bully" and a "moron" were not defamatory, as they were "merely caustic insults to which reasonable people would pay little heed"); *Smith v. Main Line Animal Rescue, Inc.*, No. 1132 MDA 2018, 2019 WL 4464814, at *8 (Pa. Super. Ct. Sept. 18, 2019) (holding that statements written in an "outlandish" blog written in a "freewheeling and sensational way" were not defamatory, as "there [was] no reason to believe that the average reader . . . would have understood the

---

[2] Jessica Walters's reviews also included statements of opinion, such as "This is a terrible business"; "To me, this is essentially soulless"; and "Don't spend your money at this business." (Doc. Nos. 1-1 and 1-2.) Statements of opinion are not actional in defamation. *See Scott v, Lackey*, CIVIL ACTION NO. 1:02-CV-1586, 2007 WL 9761643, at *4 (M.D. Pa. Dec. 10, 2007) ("[P]ure statements of the defendant's opinion, no matter how offensive to the plaintiff, do not constitute actionable defamation.").

[3] Notably, Plaintiffs do not offer any evidence showing the falsity of these statements.

statement as anything other than an . . . expression of her frustration with relevant official decisionmaking").

Plaintiffs have also failed to make out a *prima facie* case for defamation because they have not proffered evidence that they suffered actual harm—i.e., reputational harm.[4] *See Ralston*, 2021 WL 6072881, at *23. Plaintiffs claim the reviews have placed them "in jeopardy with their customers, current employees, and potential employees regarding Plaintiffs' employment practices."[5] (Doc. No. 1 ¶ 27.) They also claim that the reviews "caused Mr. Graziano to suffer loss of personal reputation, embarrassment, personal humiliation, general emotional distress, and specifically, stress relating to possible negative ramifications." (*Id.* ¶ 28.)

But they do not support these conclusory allegations with evidence: there is no evidence that any customers took their business elsewhere, nor is there any evidence that potential employees chose not to work at Blossoms & Blooms based on the comments.[6] We are not at the motion to dismiss stage, and unsupported allegations are insufficient, without more, to make out a *prima facia* case for the purposes of deciding a motion for early discovery. *See, e.g.*, *SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1218 (W.D. Wash. 2010) ("SaleHoo does not identify evidence to support each element of its defamation claim, but instead rests on the

---

[4] Plaintiffs bring a claim for defamation *per se*, as Jessica Walters's statements put Plaintiffs' business conduct into issue. Assuming, for the purposes of deciding this motion, that these statements are properly the subject of a defamation *per se* claim, Defendants need not prove special damages (pecuniary loss), but they must nevertheless prove that they suffered actual harm (reputational harm). *See Ralston*, 2021 WL 6072881, at *23.

[5] Plaintiffs also claim that they received "multiple calls on the matter" when Jessica Walters's reviews were posted, but they do not more specifically detail the subject matter of the calls or what, if any, reputational harm Graziano suffered on the calls.

[6] The Court seriously doubts that any such evidence exists. It seems very unlikely to the Court that two reviews posted on Facebook and deleted within hours (or, at most, days) could have caused the reputational harm necessary to support a defamation *per se* claim.

argument that it has alleged a viable defamation claim on the face of its amended complaint. Without more, SaleHoo has not made an adequate showing to overcome Doe's motion to quash with respect to its defamation claim."); *Pilchesky*, 12 A.3d at 444 ("More is required than a bald assertion that the defamatory statements harmed a plaintiff's reputation in the social, civil, professional and political community.").

Plaintiffs may argue that they are not required to show "actual harm" because they have shown that Jessica Walters acted with actual malice. "Ordinarily, in Pennsylvania, even in cases of defamation *per se*, a plaintiff must prove general damages from a defamatory publication and cannot rely upon presumed damages." *Synygy, Inc. v. ZS Assocs., Inc.*, 110 F. Supp. 3d 602, 613 (E.D. Pa. 2015). However, where the defendant acts with "actual malice," the plaintiff need not show "actual harm." *Id.* To show "actual malice," a plaintiff must show "that statements were made with a reckless disregard for the truth." *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 437 (Pa. 2015) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68 (1989)).

Plaintiffs have failed to establish "actual malice" here. They have offered no evidence that the statements were made with a "reckless disregard" for the truth. In fact, they have not even offered evidence that the statements were untruthful. They simply rely on the allegations that Blossoms & Blooms did pay its employees more than minimum wage and did provide its employees with "vacation time, sick time, [and] Christmas bonuses" and that Graziano never told his employees he "couldn't afford" to give them a raise. (Doc. No. 1 ¶¶ 19–21.) They offer no affidavits, payroll records, or any other evidence to show that the allegedly defamatory statements are false. If the statements are not false, they could not have been made "with a reckless disregard for the truth." Accordingly, Plaintiffs were required to show actual harm. But

they failed to do so, so their claim for defamation *per se* fails.

Plaintiffs have failed to make out a *prima facie* case for defamation, as they have not shown that Jessica Walters's statements were defamatory and they have not proffered any evidence they suffered actual harm.

### ii. False Light

Under Pennsylvania law, to establish a claim for false light invasion of privacy, a plaintiff must show that the defendant published a statement that "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citing *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc)).

Plaintiffs have failed to make out a *prima facie* case for false light invasion of privacy for several reasons. First, they have not offered any evidence that Jessica Walters's statements about Blossoms & Blooms's employment practices were untrue. Plaintiffs could have offered payroll records to show that Blossoms & Blooms pays more than minimum wage and gives its employees vacation time, sick time, and bonuses. And they could have offered an affidavit that Graziano never told any of his employees that he "couldn't afford" to give them a raise. But they did not. Instead, they point to unsubstantiated allegations that Jessica Walters's statements about Blossoms & Blooms's employment practices were false. These allegations may have been sufficient to survive a motion to dismiss, but they are not enough to make out a *prima facie* case as is necessary for the Court to permit Plaintiffs to seek early discovery. *See, e.g.*, *SaleHoo Grp.*, 722 F. Supp. 2d at 1218; *Pilchesky*, 12 A.3d at 444.

And even if Plaintiffs had offered evidence of these statements' falsity, they are not the kind of statements that would be "highly offensive to a reasonable person." To be "highly

11

offensive to a reasonable person," a statement must be more than embarrassing or annoying—it must be "highly objectionable" and "unreasonable" and must contain a "major misrepresentation of the plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be taken." *See Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 510–11 (E.D. Pa. Mar. 15, 2010); *Parano v. O'Connor*, 641 A.2d 607, 609–10 (Pa. Super. Ct. 1994). Jessica Walters's statements that Blossoms & Blooms paid its employees minimum wage and did not offer them sick or vacation time may have offended Graziano, but they would not be "highly offensive to a reasonable person." Likewise, the statement that Graziano refused to give his employees a raise because he could not afford to do so is a far cry from "highly offensive." *See Parano*, 641 A.2d at 609 (affirming trial court decision that statements referring to the plaintiffs as "adversarial," "uncooperative," and "less than helpful" could not be considered "highly offensive"). *Contra Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 563 (E.D. Pa. 2000) ("Being falsely labeled a criminal could be highly offensive to a reasonable person . . . .").

There is no evidence that Jessica Walters's statements were false, and the statements would not have been "highly offensive to a reasonable person," so Plaintiffs have failed to make out a *prima facie* case for false light invasion of privacy.

\* \* \*

Because Plaintiffs have not shown they have a *prima facie* case against Jessica Walters for defamation or false light, they are not entitled to early discovery into Jessica Walters's identity. *See McMann v. Doe*, 460 F. Supp. 2d 259, 269–70 (D. Mass. 2006) ("The Complaint does not state a claim. . . . The first and second counts of the Complaint provide no basis for this court to order John Doe's identity be revealed.").

### 3. Information Sought in Good Faith

A plaintiff may be entitled to early discovery only if the information sought "is sought in good faith, is unavailable by other means, is directly related to the claim[,] and is fundamentally necessary to secure relief." *Pilchesky*, 12 A.3d at 444–45.  The Court acknowledges this litigation cannot continue if Plaintiffs are unable to ascertain Jessica Walters's true identity, and there is no reason to believe Plaintiffs' efforts to subpoena this information are done in bad faith.  But it is not clear whether information on Jessica Walters's *true* identity is available *only* from Facebook.[7]  Because information on Jessica Walters's true identity may or may not be available from some other source, this factor neither weighs in favor nor against granting early discovery.

### 4. Balancing

Finally, the Court must balance Jessica Walters's First Amendment right to anonymity against the strength of Plaintiffs' *prima facie* case. *Id.*; *see also Dendrite*, 775 A.2d at 142.  The First Amendment protects Jessica Walters's right to speak anonymously online.  *See Enterline*, 751 F. Supp. 2d at 787; *Cahill*, 884 A.2d at 456.  We need not consider how far these protections extend because Plaintiffs have failed to state a *prima facie* case, so they are unquestionably not entitled to subpoena information to ascertain Jessica Walter's true identity.  *See McMann*, 460 F. Supp. 2d at 270 ("Plaintiff has not met the evidentiary burden required to remove John Doe's constitutional interest in his anonymity.").

\*   \*   \*

Were every business owner who received a negative anonymous review online permitted

---

[7] Again, given the allegations in the Complaint, it appears Plaintiffs have some information about the identity of the poster. (Doc. No. 1 ¶¶ 1, 7.)  And there are ways Plaintiffs could obtain additional information from sources other than Facebook:  for instance, Plaintiffs could interview individuals who were employed by Blossoms & Blooms around the time the review was posted (with a focus on those individuals who may have been denied a raise or a bonus) to attempt to uncover information about these reviews.

to seek discovery into the reviewer's identity, courts would be flooded with requests for early discovery, and the reviewer's right to maintain their anonymity would be prejudiced. The requirement that plaintiffs make out a *prima facie* case *supported by evidence* is key, both in terms of preserving judicial economy and safeguarding First Amendment interests. The Court recognizes that Plaintiffs cannot prosecute this case unless they are able to ascertain the true identity of Jessica Walters. But Plaintiffs have not even shown that they have a case against Jessica Walters. Accordingly, the Court declines to upset Jessica Walter's First Amendment right to speak anonymously online and denies Plaintiffs' request to subpoena Facebook prior to a Rule 26(f) conference.

### III.   CONCLUSION

For these reasons, Plaintiffs' motion is denied. An appropriate Order follows.